O’NIELL, Chief Justice.
 

 H. L. Bynum, having a contract with- the highway department for the construction of a graveled highway, in Morehouse parish, entered into a contract with G. C. Bates, by which Bates was to unload and haul the gravel from the railroad cars and supervise the spreading of it on the highway, for $1.50 per cubic yard. It was stipulated that, if Bates should fail to complete his undertaking, he should receive for the unloading, hauling, and supervising of spreading, actually done, only 40 cents per cubic yard for the first mile that the gravel was hauled and 20 cents per cubic yard for every additional mile.
 

 Bates entered into a contract with the Monroe Grocer Company to furnish the money necessary to meet the pay rolls and to pay the other expenses to be incurred by Bates in carrying out his contract with Bynum, and. in consideration for the service to be so rendered by the Monroe Grocer Company, Bates agreed that the company should have a third of the profit to be made on his contract with Bynum. Accordingly, it was stipulated that all sums to become due to Bates under the contract should be paid by Bynum to the Monroe Grocer Company, and that, after-payment of all bills, the company should pay two-thirds of the profit, to Bates, and retain one-third. Bynum was so notified and approved the contract between Bates and the Monroe Grocer Company.
 

 Bates had employed J. L. Ham to work on the job, under a verbal contract, by which Ham was to receive a third of whatever profit might be made by Bates on his contract with Bynum.
 

 Work was commenced immediately after the signing of the contract with Bynum, and was continued for about three months, with Bates working at one end of the job and Ham at the other end, and the Monroe Grocer Company attending to the finances. But dissension arose between Bates on the one hand and Ham and the Monroe Grocer Company on the other hand, because Ham and the grocer company suspected and accused Bates of
 
 *861
 
 spending for other purposes money drawn by him to pay expenses pertaining to the work being done under the Bynum contract. The discord resulted in Bates’ abandoning the contract and turning over the work to Bynum, about three months after the date of the contract between Bates and Bynum. The Monroe Grocer Company had paid, for the work done under the contract, $12,090.44, and had received from Bynum for the estimates of the work done $11,718.00, and was therefore out $372.44. Ham and a representative of the Monroe Grocer Company called upon Bynum and tendered to him $1,200 to cover all unpaid expenses of the work done under the contract, and demanded that they, Ham and the Monroe Grocer Company, should be permitted to carry out Bates’ contract with Bynum. He declined the offer, on the ground that his contract with Bates had been a personal on.e, made largely in consideration of Bates’ experience and skill in such work, and that Ham was without either skill or responsibility, and the Monroe Grocer Company had neither the corporate capacity to enter into such a contract nor the ability to perform it. Bynum, therefore, took over and completed the work which Bates had contracted to do.
 

 The Monroe Grocer Company and Ham brought this suit against Bynum, and the highway commission and the police jury of the parish of Morehouse, for two-thirds of the profit which the plaintiffs claimed they would have made if Bates had fulfilled his contract with Bynum. The plaintiffs contend that Bates’ abandonment of his contract was done in conspiracy with Bynum, and for the purpose of defrauding them, the Monroe Grocer Company and Ham, of two-thirds of the profit which Bates would have made if he had fulfilled his contract with Bynum. The plaintiffs alleged that the quantity of gravel to be hauled and spread, under the contract between Bates and Bynum, was 15,000 cubic yards, and that the amount which Bates would have received for the work, at, $1.50 per cubic yard, if he had fulfilled his contract, would have been $22,500. Hence they prayed for a judgment against the highway commission, the police jury, and Bynum and the surety on his bond, in solido, for $22,500, less the sum of $11,71S, which Bynum had paid to the Monroe Grocer Company. They prayed also for a settlement of what they termed the partnership theretofore existing between them and Bates. They prayed for and obtained a writ of injunction forbidding the highway department to pay to Bynum, and forbidding Bynum to receive or to pay to Bates, the sum of $4,071.60, or any part thereof.
 

 After trial of the case on its merits, the district judge rejected the demands of the plaintiffs, dissolved the writ of injunction, and condemned the plaintiffs to pay to Bynum $1,000 damages, less the sum of $372.-44 which Bynum owed for the work which Bates had done when he abandoned his contract. The plaintiffs have appealed.
 

 The claim of the appellants is founded upon the supposition that, if Bates had fulfilled •his contract, and had hauled 15,000 cubic yards of gravel, at $1.50 per cubic yard, he would have made a large, profit, in which the appellants would have shared.
 

 In their' briefs, the appellants claim, in the alternative, and only in the event that
 
 *863
 
 their primary demand should not be allowed, that they should have two-thirds of the profit which they say Bates had earned when he abandoned his contract; which profit they allege was $5,219.72. They concede that Bates was entitled to one-third of the alleged profit of $5,219.72, that is, $1,739.91, less, however, the sum of $1,546.49, which Bynum had paid Bates, leaving him entitled to $193.42. The appellants claim, therefore, that Ham is entitled to at least $1,739.91, less $39.50 which he owed to Bynum, leaving a balance of $1,700.41 due to Ham. The appellants claim, therefore, in the alternative, that the Monroe Grocer Company should have judgment for at least $1,739.90, plus the sum of $1,546.49 which Bynum paid to Bates, and plus the sum of $39.50 which Ham owed Bynum, making a total of $3,325.89 claimed by the Monroe Grocer Company. The record discloses, however,. that the payment of $11,718 by Bynum was made on the basis of $1.50 per cubic yard of gravel hauled and spread under the Bates contract, on the same basis as if Bates had fulfilled his
 
 contract,
 
 instead of subjecting himself to the lower rate of compensation. If Bates had been paid according to the rate stipulated for his failure to complete the contract, he would have received only $11,245.32, or $472.68 less than Bynum actually paid him under the contract. Besides, when Bates abandoned his contract, he owed $2,983.79 for labor performed and for oil and gasoline used on the job; which amount Bynum had to pay.
 

 It is virtually conceded by the appellants that their case depends upon the question of fact as to whether Bates’ abandonment of his contract was done in conspiracy with Bynum, to defraud Ham and the Monroe Grocer Company. We agree with the district judge that there is no proof of such a conspiracy, or of fraud on Bynum’s part. The reason why Bates abandoned his contract was that he was unwilling to submit to the annoyance and humiliation of being accused by Ham and the Monroe Grocer Company of misappropriating money received from the company for carrying on his contract with Bynum.
 

 The amount allowed Bynum for the damages caused by the wrongful issuing of the writ of injunction is not excessive. A bank cashier testified that Bynum’s checks, which would have been cashed otherwise, were turned down by the bank on account of the writ of injunction, and that his credit and financial reputation were .thereby impaired. A surety company that had signed two bonds for Bynum, for road contracts, refused to sign another such bond, on account of the writ of injunction in this case; and Bynum was thereby financially embarrassed and inconvenienced. Besides these damages, he claims $500 for attorneys’ fees. The district judge did not undertake to apportion the several items or elements of damage, but allowed the lump sum of $1,000, which we consider reasonable.
 

 Our conclusion is that the judgment appealed from is correct.
 

 The judgment is affirmed.